NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
RYAN WATERS (Cal. Bar No. 268015)
Special Assistant United States Attorney
Asset Forfeiture Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4493
     Facsimile: (213) 894-0142
     E-mail: Ryan.Waters@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> $959,946.00 IN BANK FUNDS, <br><br> Defendant. | No. 2:19-cv-02396 <br><br> <u>VERIFIED COMPLAINT FOR FORFEITURE</u> <br><br> 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984 <br><br> [U.S.S.S.] |

Plaintiff United States of America brings this claim against defendant $959,946.00 in Bank Funds, and alleges as follows:

<u>JURISDICTION AND VENUE</u>

1.  The government brings this <u>in</u> <u>rem</u> civil forfeiture action pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) and 984.

2. This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395(a).

## PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The defendant in this action is $959,946.00 in Bank Funds seized pursuant to a federal seizure warrant on October 31, 2018, from a Bank of America account with the last four digits ending in 7448 ("BofA Account 7448") and held in the name of Shaobo Yu (the "defendant funds"). The defendant funds were seized at Bank of America, Legal Order Processing, 800 Samoset Drive, Newark, Delaware.

6. The defendant funds are currently in the custody of the United States Secret Service ("USSS") in this District, where they will remain subject to this Court's jurisdiction during the pendency of this action.

7. The interests of Shaobo Yu and five victims (respectively referred to as Victim Company #1, Victim Company #2, S.C., Victim Company #4, and W.H.) may be adversely affected by these proceedings.

## FACTS SUPPORTING FORFEITURE

Background on Fraud Scheme Investigation

8. Beginning around the spring of 2017, the USSS learned of a romance scam, social engineering scam and business email scam fraud scheme involving multiple victims. A romance scam fraud scheme occurs when a victim is induced into believing he

or she is in a romantic relationship with the fraudster, who is using a fake internet persona. The fraudster then convinces the victim, through false pretenses and material misrepresentations, to wire money into accounts controlled by the fraudster.

9. A social engineering scam fraud scheme is similar to a romance scam fraud scheme. However, social engineering scam fraud scheme victims also sometimes serve as money mules, in that these victims are recruited by the scheme perpetrators to receive and transfer money acquired from the perpetrators' criminal activities.

10. A business email scam fraud scheme targets victim companies by targeting company employees with access to company finances and tricking them into making wire transfers to bank accounts thought to belong to trusted company partners, when in fact the money is wire transferred into accounts controlled by the scheme perpetrators. In most cases, the targeted employees of the victim company has not met the scheme perpetrator before the employee wires or sends funds, and the funds are transferred through intermediary bank accounts being used as layering accounts. Layering entails separating the criminal proceeds from their original source and creating a complex audit trail through a series of financial transactions to make the proceeds appear to have come from legitimate sources.

11. From November 30, 2016 to December 29, 2016, BofA Account 7448 received $1,959,983 from a China Merchants Bank account ending in 2607 and held in the name of Baolifeng International Trading Limited (the "Baolifeng Account"). The Baolifeng Account was a layering account that was used by the

scheme perpetrators to receive proceeds of the fraudulent scheme from several different victims, and funds were thereafter transferred from that account to BofA Account 7448.

<u>Victim Company #1 (Business Email Scam Fraud Scheme)</u>

12. In December 2016, an accountant at Victim Company #1 received an email purporting to be from the president and owner of Victim Company #1's email account, requesting that $28,600 be wired from Victim Company #1 to a Wells Fargo Bank account ending in 6297 ("WF Account 6297") and in the name of JD Bulk Incorporated. Victim Company #1's accountant believed the email was legitimate and sent the $28,600 wire transfer as requested. Several days later, Victim Company #1's president discovered that the funds had been transferred as a result of an email scam.

13. USSS investigators spoke with Jael De Jesus, who had opened WF Account 6297. De Jesus told investigators the following information. De Jesus was a citizen of the Dominican Republic and resided in the United States as a green card holder. De Jesus had lost his job in 2016, and while searching for employment read about a job on Craigslist.com selling home and kitchen products. After responding to the ad, De Jesus was contacted via email by an unknown individual who stated that De Jesus would be hired and asked De Jesus to provide all of his personal identifying information, including his full name, address and date of birth.

14. De Jesus was also asked to open a bank account in the name of JD Bulk Incorporated, and to set up the account with online banking access. De Jesus opened WF Account 6297 and then

emailed the unknown individual on Craigslist.com with the name of the bank account, account number and online banking password. De Jesus never made any deposits into WF Account 6297 or initiated any wire transfers.

15. Bank records for WF Account 6297 reflect the $28,600 incoming December 12, 2016 wire transfer from Victim Company #1 and a subsequent December 13, 2016 $21,506 outgoing wire transfer to the Baolifeng Account. As mentioned in paragraph 11 above, the Baolifeng Account was used as a layering account to create an air of legitimacy to the fraudulent transactions, and funds from that account were thereafter transferred to BofA Account 7448.

Victim Company #2 (Business Email Scam Fraud Scheme)

16. E.H. maintained an individual retirement account at Victim Company #2. On December 7, 2016, an unknown individual created a new online account for E.H. at Victim Company #2 using E.H.'s personal identification information and an AOL email account. On December 12, 2016, an unknown individual changed the existing customer automated clearing house ("ACH") banking information for E.H. to a newly established ACH account at TD Bank. On December 21, 2016, Victim Company #2 received ACH instructions to wire $724,395 from E.H.'s individual retirement account to an account at TD Bank ending in 6201 held in the name AFDCT ("TD Bank Account 6201").

17. Victim Company #2 investigators interviewed E.H. on December 28, 2016 and learned the following information. E.H. did not have an AOL email account, did not conduct online banking on his Victim Company #2 individual account, relied on

his financial advisor for any information on his Victim Company #2 account, and did not have a TD Bank account.

18. In January 2018, USSS investigators interviewed Natalie Armona, the authorized signer for TD Bank Account 6201, who told investigators the following. In 2016, Armona was approached by her friend Melissa Rios with an opportunity to open a business. Rios then introduced Armona to Pedro Reyes, who explained that a business would be opened in Armona's name to distribute products coming from Hong Kong and China. Reyes told Armona that she would have to open bank accounts, would receive wire transfers into those accounts, would receive instructions to wire funds from those accounts, and Armona would receive a 1% fee of all sales of products coming from Hong Kong and China.

19. Reyes had instructed Armona to check the bank account balances online, and provided Armona with instructions to wire funds to overseas bank accounts, including accounts in Poland and Hong Kong and to a company in China called Bao Life or Baofeng. Armona received approximately one million dollars into all the bank accounts she had opened.

20. TD Bank Account 6201 bank records reflect the $724,395 December 21, 2016 wire transfer into the account from Victim Company #2 and a $94,218 December 23, 2016 wire transfer and a $13,800 December 27, 2016 from the account to the Baolifeng Account.

Victim Company #3 (Business Email Scam Fraud Scheme)

21. On December 14, 2016, Dawn Kollros, account manager for Victim Company #3, received an email, which she believed to

6

be from Victim Company #3's Chief Executive Officer. The email contained instructions to wire $38,400 to an account at TD Bank in the name DL Energy. Shortly after the initial email, Kollros received a new email instructing her to cancel the DL Energy wire transfer and to wire a $41,500 payment instead to TD Bank Account 6201. Kollros then received a third email instructing her to send an additional payment to TD Bank Account 6201, in the amount of $38,400. Kollros initiated the two wire transfers as requested. Victim Company #3 quickly discovered the fraudulent email request and was able to recall both wire transfers sent to TD Bank Account 6201.

<u>Victim S.C. (Romance Scam Fraud Scheme)</u>

22. In 2012, victim S.C. met a person who went by the name Gilbert Roberts on an internet dating website. S.C. began communicating with Roberts via email and phone. S.C. never met Roberts in person.

23. On two occasions throughout the four years that they communicated, S.C. and Roberts set wedding dates. However, both wedding dates were called off because Roberts told S.C. he would be out of town or was sick. Roberts told S.C. that he was a businessman and owned an oil company located in Nigeria. Roberts also asked S.C. to help fund his business. S.C. told law enforcement officers that she later realized she was scammed.

24. As a result of Roberts' requests for funds, S.C. wired approximately $500,000 from her Bank of America and JP Morgan Chase accounts to accounts identified to her by Roberts. Roberts also told S.C. that he had United States investors who

would be investing in his oil business. Roberts asked S.C. if those investors could wire the funds into S.C.'s account so that S.C. could forward those funds to accounts identified by Roberts. S.C. agreed to the arrangement and started receiving wire transfers within a few weeks from bank accounts in the United States. S.C. then forwarded those funds to bank accounts that Roberts provided.

25. Specifically, S.C. made the following wire transfers totaling $64,000 from her JP Morgan Chase account to the overseas bank account of Sought-After International Synergy: (1) an August 1, 2016 transfer of $22,000; (2) an August 11, 2016 transfer of $21,000; and (3) an August 23, 2016 transfer of $21,000.

26. Bank records for the Baolifeng Account show a $200,000 wire from Sought-After International Synergy on January 4, 2017 into the Baolifeng Account. As mentioned in paragraph 11 above, funds from the Baolifeng Account were transferred to BofA Account 7448.

Victim Company #4 (Business Email Scam Fraud Scheme)

27. On March 7, 2016, Victim Company #4's officer manager Gayla Bess received an email message requesting a wire transfer, which she thought had been sent from Shawn Beard, the co-owner of Victim Company #4. The email requested $157,773 to be sent to an HSBC Bank account, with the wire transfer beneficiary being Anrock Technology HK Co. LTD ("Anrock Technology Account"). The day after wiring the funds, Victim Company #4 realized that the email had not been sent from Beard.

28. Based on Anrock Technology Account bank records,

$157,773 was transferred to the account from Victim Company #4 on March 8, 2016 and $157,585 was transferred from the account on March 8, 2016 to a bank account at Mashreq Bank PCS for Rosy Overseas LTD ("Rosy Overseas Account"). According to Rosy Overseas Account bank records, on June 16 and June 17, 2016, $99,500 and $288,650, respectively, were wired from that account to the Baolifeng Account.

Victim W.H. (Romance Scam Fraud Scheme)

29. In January 2016, victim W.H. was contacted via email on LinkedIn, a business networking site, by someone who went by the name Ashley Laura Branson. Branson's LinkedIn profile indicated that she was a nurse consultant who lived in London. W.H. and Branson began communicating via telephone and email, but never met in person. After a few months of communicating, W.H. felt like a strong friendship had developed between the two of them.

30. In February 2016, Branson told W.H. that she had inherited undeveloped land in South Africa which she was in the process of selling for three million dollars. On multiple occasions, Branson asked W.H. if W.H. would help pay some of the fees that would result from selling the land. On one occasion, Branson asked if W.H. would pay a property conveyance invoice that was due for $6,500. W.H. agreed and sent $6,500 to Branson via Moneygram.

31. On another occasion, Branson asked W.H. to help her pay municipality tariff tax and transfer deed fees totaling

$368,759.00. W.H. asked Branson to sign a promissory note prior to sending any funds, and Branson agreed.

32. From February 2016 to June 2016, W.H. sent approximately $3.8 million dollars to accounts provided by Branson.

33. Included in that amount were two transfers in May of 2016 totaling $350,000 that W.H. sent to a Hang Seng Bank account in the name of Best Blissing International ("Best Blissing Account"). Bank records from the Best Blissing Account reflect two wire transfers in May of 2016 totaling $773,908 from the Best Blissing Account to the Baolifeng Account.

34. In addition, W.H. sent five wire transfers from May 17, 2016 to June 1, 2016 totaling $1,740,000 to an HSBC account in the name of Lucky Peridot Company Limited ("Lucky Peridot Account"). Bank records from the Lucky Peridot Account reflect two wire transfers totaling $669,305 from the Lucky Peridot Account to the Rosy Overseas Account (and as mentioned above, funds were wired from the Rosy Overseas Account to the Baolifeng Account). In addition, a $28,272 wire transfer was sent on May 20, 2016, from the Lucky Peridot Account to the Baolifeng Account.

BofA Account 7448

35. On March 21, 2018, a USSS investigator interviewed Yu regarding his BofA Account 7448. Yu told the investigator that he lived in Zhejiang, China but was in the Los Angeles area to withdraw funds from BofA Account 7448. Yu stated that he was unemployed and supported himself through funds from his father,

who owned a business named Baofang, which was a manufacturing company that produced t-shirts and shipped those t-shirts to a retailer in Nigeria, Africa for sale. Yu further stated that Baofang employed approximately one thousand workers and earned approximately $200 million in annual revenues.

36. When asked about the November and December 2016 deposits from the Baolifeng account into BofA Account 7448, Yu explained that those funds were received from his father's business via a currency exchange house. The total of the above-referenced November and December 2016 wire transfers was $1,959,983.

## FIRST CLAIM FOR RELIEF

37. Plaintiff incorporates the allegations of paragraph 1-35 above as though fully set forth herein.

38. Based on the above, plaintiff United States of America alleges that the defendant funds constitute or are derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 (wire fraud), and/or 1344 (bank fraud), which are specified unlawful activities as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). In addition, to the extent that the defendant funds are not the actual monies or assets directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property

involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

## SECOND CLAIM FOR RELIEF

39. Plaintiff incorporates the allegations of paragraph 1-35 above as though fully set forth herein.

40. Based on the above, plaintiff United States of America alleges that the defendant funds constitute property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and/or and (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being violations of 18 U.S.C. §§ 1343 (wire fraud) and/or 1344 (bank fraud). The defendant funds are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). In addition, to the extent that the defendant funds are not the actual monies or assets directly traceable to the illegal activity identified herein, plaintiff alleges that the defendant funds are identical property found in the same account or place as the property involved in the specified offense, rendering the defendant funds subject to forfeiture pursuant to 18 U.S.C. § 984.

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the defendant funds;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should be not be decreed;

1      (c)  that this Court decree forfeiture of the defendant
2 funds to the United States of America for disposition according
3 to law; and
4      (d)  for such other and further relief as this Court may
5 deem just and proper, together with the costs and disbursements
6 of this action.

Dated: March 29, 2019          NICOLA T. HANNA
                               United States Attorney
                               LAWRENCE S. MIDDLETON
                               Assistant United States Attorney
                               Chief, Criminal Division
                               STEVEN R. WELK
                               Assistant United States Attorney
                               Chief, Asset Forfeiture Section

                                 */s/ Ryan Waters*
                               RYAN WATERS
                               Special Assistant U.S. Attorney
                               Asset Forfeiture Section

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

## VERIFICATION

I, Fred Apodaca, hereby declare that:

1. I am a Special Agent with the Department of Homeland Security ("DHS"), United States Secret Service ("USSS").

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 29, 2019 in Los Angeles, California.

*/s/ Fred Apodaca*
FRED APODACA
SPECIAL AGENT - USSS